BLANK ROME LLP
Allen Ho (SBN 318187)
allen.ho@blankrome.com
William R. Bennett III (SBN 05329)
william.bennett@blankrome.com
Lauren B. Wilgus (SBN 05123)
lauren.wilgus@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

Attorneys for Defendant
NUTRION FEEDS NORTH AMERICA, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THORCO PROJECTS A/S<br><br>Plaintiff,<br><br>vs.<br><br>NUTRION FEEDS NORTH AMERICA, INC.<br><br>Defendant. | Case No. 2:22-cv-01331(TLN)(JPD)<br><br>Judge: Hon. Troy L. Nunley<br><br>**IN ADMIRALTY**<br><br>**DEFENDANT NUTRION FEEDS NORTH AMERICA, INC.'S EX PARTE APPLICATION TO REDUCE SECURITY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint Filed: July 27, 2022<br>Trial Date: None Set |

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Subject to and without waiving its restricted appearance pursuant to Supplemental Admiralty Rule E(8), Defendant Nutrion Feeds North America, Inc. ("Defendant" or "Nutrion") respectfully applies *ex parte* for an order reducing the security ordered pursuant to this Honorable Court's Order Authorizing Issuance of Process of Maritime Attachment and Garnishment dated July 28, 2022 (*see* Dkt. 6), and barring Plaintiff Thorco Project A/S ("Plaintiff" or "Thorco") from arresting or attaching additional property of Nutrion for further security. This application is made pursuant to Federal Rule of Civil Procedure Supplemental Admiralty Rules E(6) and E(4)(f). Supplemental Rule E(6) provides that whenever security is taken in accordance with a maritime arrest or attachment, the court may reduce the amount of security given, and Rule E(4)(f) further entitles a party whose property is arrested or attached to a prompt hearing to show why the arrest or attachment should not be vacated or other relief granted. Accordingly, *ex parte* relief is warranted to ensure that Defendant receives the prompt hearing it is entitled to.

Nutrion bases its *ex parte* application on this Notice, the attached memorandum of points and authorities, and the other documents referenced in these papers. The bases for this Application include, without limitation, all documents on file in this action, and specifically the Court's July 28, 2022 Order (Dkt. 6). The *ex parte* nature of this application is warranted because the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure entitle Nutrion to a prompt hearing concerning why the arrest or attachment of its property should not be vacated or reduced.

DATED: August 17, 2022    BLANK ROME LLP

By: */s/ Allen Ho*
    Allen Ho
    William R. Bennett III*
    Lauren B. Wilgus*
Attorneys for Defendant
NUTRION FEEDS NORTH AMERICA, INC.
*\* - pro hac vice application to be submitted*

i

**DEFENDANT NUTRION FEEDS NORTH AMERICA, INC.'S EX PARTE APPLICATION TO REDUCE SECURITY**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT.

In its Verified Complaint, Thorco[1] knowingly and improperly inflated its claims against Nutrion by adding damages based on terms in a contract to which Nutrion is not a party and then further increased that amount by an additional 50% based on costs and charges which are wholly speculative and not supported by any evidence. As set forth below, the Court should exercise its discretion under Fed. R. Civ. P. Supp. Admiralty Rule E(6) and reduce the security ordered in this case.

*First*, Thorco's claim for $2,782,886.24 in "Hire," "Hire or Damages for Hire", "CVE" and "MGO" charges is barred under the U.S. Supreme Court's decision in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), and its progeny. The claims are based on a time charter party between Thorco and the Vessel's owner, to which Nutrion is not a party. Thus, these claims are not contractual claims against Nutrion but, rather, tort claims Thorco has asserted to recover its economic losses. It is undisputed that Thorco is not the owner of the damaged cargo. And because Plaintiff is a time charterer, it lacks sufficient proprietary rights in the Vessel to recover its economic losses under *Robins Dry Dock*.

*Second*, even if the Court finds the claims for "Hire," "Hire or Damages for Hire", "CVE" and "MGO" charges are not barred by *Robins Dry Dock*—and Nutrion maintains that they are—the Court should reduce the security for Plaintiff's claims for "Hire" and "Hire or Damages for Hire" from $2,460,312.00 to $1,585,534.40. Thorco wrongly used the $45,000 pdpr "Hire" amount listed in the time charter between itself and the Vessel's owner. Rather, Plaintiff should have used the $29,000 pdpr "demurrage" and "detention" amount agreed in the voyage charter between the parties.

///

///

---

[1] In the Verified Complaint, Plaintiff states it was the "disponent owner" of the Vessel at the time of the incident. (*See* Dkt. 1 ("Verified Complaint") ¶ 5.) As the "disponent owner," Plaintiff did not own the Vessel but, instead, time chartered the Vessel from the registered owner, who, upon information and belief, is Wealth Line Inc. (*See* **Exhibit A** (Equasis Ship History Report).)

*Third*, the Court should also reduce Plaintiff's claims for "CVE" and "MGO"[2] from $445,589,84 to $0 because, like the "Hire" and "Hire or Damages for Hire" claims, these claims, too, arise under the time charter to which Nutrion is not a party.

*Fourth*, the $1,342,956.47 in "Stockton port PDA costs" and the "Discharge Costs at Mare Island" listed in the estimated damages spreadsheet attached as Exhibit 3 to the Verified Complaint are wholly speculative and not supported by any evidence.

*Finally*, Plaintiff's claims for $985,000 in estimated interest on the principal claim, arbitration costs and solicitor and counsel fees in the London arbitration are excessive and are not supported by any Declaration of an English solicitor qualified to provide an estimate of these charges.

II. **BACKGROUND FACTS.**

On or about March 1, 2022, Thorco and Nutrion entered into a voyage charter for the carriage of approximately 4,000 metric tons of primarily calcium salt and palmitic acids (the "Cargo") from Jarkarta, Indonesia to Stockton, California (the "Voyage Charter"). (*See* Verified Complaint at ¶ 6; Dkt. 1-1 (Ex. 1 to Verified Complaint).)

The Voyage Charter specifies the terms for the shipment, including the agreed calculation of demurrage[3] and detention[4] charges should Nutrion fail to load or discharge the Cargo within the agreed time period. (*Id.*) Specifically, the Voyage Charter states the demurrage and detention charges are as follows:

```
- Load/ Disch Terms:
    - At Jakarta: 1000 satshex with 48 hrs free of charge after NOR
      is tendered; thereafter time to count
    - At Stockton: Liner Out Hook
- Freight: Usd 210 pmt free in lsd / Liner Out Hook
```

---

[2] While it is clear that "MGO" relates to bunker fuel used by the Vessel, it is less clear what "CVE" stands for. Defendant is unable to determine what this line item relates to as it was not a party to the Time Charter between Plaintiff and the Vessel's head owner.

[3] Demurrage constitutes the compensation to which an owner is entitled, if the charterer fails to discharge the ship within laytime allowed.

[4] Detention charges are unliquidated damages claimed for breach of contract.

2

**DEFENDANT NUTRION FEEDS NORTH AMERICA, INC.'S EX PARTE APPLICATION TO REDUCE SECURITY**

> - Demurrages: Usd 29.000 pdpr fd at load
> - Detention: Usd 29.000 pdpr

(*See* Dkt. 1-1 (Ex. 1 to Verified Complaint) at p. 2 (emphasis added).)

The Cargo was loaded aboard the M/V ANSHUN ("Vessel") at Jakarta, Indonesia on or about April 1-3, 2022. Upon arrival at the discharge port in Stockton, California, in June 2022, part of the Cargo was found to be allegedly damaged. (*See* Verified Complaint at ¶ 11; Dkt. 1-2 (Ex. 2 to Verified Complaint).)

According to the Verified Complaint, as a result of the alleged Cargo damage, discharge was delayed for 15.6875 days – *i.e.,* from 1700 on June 16, 2022 to 0930 on July 3, 2022, and the Vessel was delayed for an additional 38.9861 days. (*See* Dkt. 1-3 (Ex. 3 to the Verified Complaint).)

### III. PROCEDURAL HISTORY.

On July 27, 2022, Plaintiff filed a Verified Complaint in the Eastern District of California pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. ("Rule B") seeking security for its claims in London arbitration. (*See* Verified Complaint.)

According to the Verified Complaint, the principal amount of Plaintiff's claims is $4,125,000, plus interest of $485,000, plus arbitration costs of $250,000, plus $250,000 in attorneys' fees, for a total of $5,110,000. (*See* Verified Complaint at ¶ 21; Dkt. 1-3.)

On July 28, 2022, this Honorable Court issued the Order on Security directing the Clerk to issue Process of Maritime Attachment and Garnishment ("PMAG") against Defendant's property in the Court's District. (*See* Dkt. 6.) The amount of the Order on Security is **$5,110,000**.

On July 29, 2022, Plaintiff's process server served a copy of the Order on Security, PMAG and supporting papers on the Cargo being stored at Trans-Hold, Inc. at 313 Luce Ave, Stockton, CA 95203.

### IV. ARGUMENT.

**A.     Defendant Requests An Expedited Hearing Under Rule E(4)(f).**

Plaintiff cannot demonstrate sufficient grounds to support the drastic pre-judgment attachment remedy available under Rule B, and an expedited Rule E(4)(f) hearing is required. Rule

E(4)(f) provides any person whose property has been attached under Rule B an immediate opportunity to appear before a district court to contest the attachment:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Fed. R. Civ. P. Supp. Admiralty Rule E(4)(f). This rule – which puts the burden on the plaintiff – is necessary to give a respondent its day in court after a plaintiff has obtained *ex parte* relief, outside of the adversarial system with minimal oversight, to seize another's property.

Given that Plaintiff's pleading is deficient on its face, Defendant respectfully invokes this right.

### B. This Court Should Exercise Its Discretion and Reduce the Amount of Security Pursuant To Admiralty Rule E(6).

The Court may, for good cause shown, reduce the amount of security pursuant to Fed. R. Civ. P. Supp. Admiralty Rule E (6). Rule E (6) provides:

> Reduction or Impairment of Security. Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing.

*Id.* The reference to "good cause shown" implicates the Court's longstanding authority to grant equitable relief in admiralty cases. *Vencedor Shipping Ltd. v. Ingosstakh Ins. Co.*, 2010 A.M.C. 2177, *2 (S.D.N.Y. 2010). The Federal Courts have noted their wide discretion to set or reduce security. *Transportes Navieros y Terrestres S.A. de C.v. v. Fairmount Heavy Transport N.V.*, 572 F.3d 96 (2d Cir. 2009) (noting the burden to provide security of twice the amount of the claim and court's discretion to lower security to a reasonable amount); *see also, e.g., Totalmar Navigation Corp. v. ATN Indus., Inc.*, No. 08 Civ. 1659, 2008 WL 5111316, at *5-*6 (S.D.N.Y. Dec. 3, 2008) (finding good cause to reduce the attachment); *Glory Wealth Shipping Serv. Ltd. v. Five Ocean Corp.*, 571 F.Supp.2d 531, 537-38 (S.D.N.Y. 2008) (finding no good cause under Rule E(6) to reduce the attachment where plaintiff's damages calculation is not frivolous); *Sixteen Thirteen Marine S.A. v. Congentra A.G.*, No. 08 Civ. 1318, 2008 WL 2885307, at *9 (S.D.N.Y. July 25,

4

2008) (reducing attachment under Rule E(6) where a portion of plaintiff's damages was based on "little more than wishful thinking" unsupported by any factual allegations); *Sanko S.S. Co. v. China Nat'l Chartering Corp.*, 536 F.Supp.2d 362, 368 (S.D.N.Y. 2008) (concluding "that the amount of the attachment must be reduced as [plaintiff] has overreached in the amount it attached based on this claim" and, absent "documentary evidence regarding fees and costs," "accept[ing] [defendant's] estimation of . . . sufficient security for costs"); *Rice Co. v. Express Sea Transp. Corp.*, No. 07 Civ. 7077, 2007 WL 4142774, at *3 (S.D.N.Y. Nov. 15, 2007) (finding no good cause to reduce the attachment despite a factual dispute where evidence suggested that plaintiff's damages estimate was non-frivolous); *Ronda Ship Mgmt. Inc. v. Doha Asian Games Org., Comm.*, 511 F.Supp.2d 399, 406 (S.D.N.Y. 2007) (finding good cause to reduce the attachment where plaintiff seeks security for damages arising from a charter party that is not mentioned in the complaint); *Flame Mar. Ltd. v. Hassan Ali Rice Exp. Co.*, No. 07 Civ. 4426, 2007 WL 2489680, at *2 (S.D.N.Y. Aug. 31, 2007) (reducing attachment "to reflect the maximum award that [plaintiff] can recover in [the arbitration proceedings]"); *Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Sen.*, 411 F.Supp.2d 386, 396 (S.D.N.Y. 2006) (finding "good cause" pursuant to Rule E(6) to reduce the amount of a maritime attachment where the complaint did not accurately allege the amount of damages as evidenced by the parties' underlying contract); *Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd.*, No. 05 Civ. 7173, 2005 WL 2446236, at *2 (S.D.N.Y. Oct. 3, 2005) (reducing attachment to amount of damages for which plaintiff offered substantiating evidence).

For the reasons set forth below, this Court should exercise its discretion under Rule E (6) and reduce the amount of security ordered in this action.

### 1. Plaintiff's Claims For Hire and Bunkers Charges Are Pure Economic Losses and Are Barred By *Robins Dry Dock*.

In *Robins Dry Dock & Repair Co. v. Flint*, the Supreme Court held that a plaintiff in a maritime case may recover economic losses <u>only</u> where the plaintiff has suffered physical damage to its property and the economic losses complained of, flow from the damage to the physical property:

/ / /

> [N]o authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong.

275 U.S. at 309; *see Nautilus Marine, Inc. v. Niemela*, 170 F.3d 1195 (9th Cir. 1999) (following *Robins Dry Dock*). Critically, the U.S. Supreme Court rejected the notion that a time charterer should be entitled to damages suffered from lost profits that resulted from damage to the vessel's propeller caused by a third-party. The Supreme Court reasoned that because the time charterer had no proprietary interest in the vessel, he could not recover any economic damages.

Here, in its Verified Complaint, Plaintiff itemizes its damages for "Hire," "Hire or Damages for Hire", "CVE" and "MGO" as follows:

| **Time Charter Costs and Claims** | | | | | | |
|---|---|---|---|---|---|---|
| Hire | 45,000 | pdpr | 15.6875 | days | $705,937.50 | Per *time charter* rates for the period 1700 hours 16 June 2022 to 0930 hours 3 July 2022 |
| Hire or Damages for Hire | 45,000 | pdpr | 38.9861 | days | $1,754,374.50 | Per *time charter* rates for the period from redelivery to estimated final discharge of cargo and cleaning of holds |
| Less Comm | 5% | | | | $-123,015.60 | |
| CVE | 1,00 | p 30 days | | | $2,733.68 | Per *time charter* rates |
| MGO | 6.00 | mt | 1350 | pmt | $442,856.16 | Per *time charter* rates |

(*See* Verified Complaint at ¶17; Dkt. 1-3 (emphasis added).) Plaintiff's own description of the calculation of these claims, *i.e.* "per time charter," makes it clear that the claims are based on the Time Charter between Plaintiff and the Vessel's owner, and not breach of the Voyage Charter between Plaintiff and Defendant. Therefore, these claims for "Hire," "Hire or Damages for Hire", "CVE" and "MGO" are not contractual claims against Nutrion but, rather, tort claims asserted to

6

recover economic losses. Because Plaintiff is a time charterer, it lacks sufficient proprietary rights in the Vessel to recover its economic losses under *Robins Dry Dock*. As such, Plaintiff's claims for "Hire," "Hire or Damages for Hire", "CVE" and "MGO" are not valid maritime claims under Rule B.

Thus, the Court should exercise its discretion under Rule E (6) and reduce the amount of security by $2,782,886.24, which includes Plaintiff's invalid economic loss claims for "Hire," "Hire or Damages for Hire", "CVE" and "MGO".

### 2. Alternatively, the Court Should Reduce the Security Because Plaintiff's Claim Is Improperly Inflated.

#### a. Plaintiff's Claims for "Hire" and "Hire or Damages for Hire" Should Be Reduced To $1,585,534.40.

Even if the Court does not reduce the security by the full amount requested in Section A above, it should reduce the security for Plaintiff's Claims for "Hire" and "Hire or Damages for Hire" from $2,460,312.00 to $1,585,534.40.

As set forth above, Plaintiff's claims for "Hire" and "Hire or Damages for Hire" are calculated using the $45,000 pdpr amount included in the time charter between Plaintiff and the Owner, to which Nutrion was not a party:

| Hire | **45,000** | **pdpr** | 15.6875 | days | $705,937.50 | Per *time charter* rates for the period 1700 hours 16 June 2022 to 0930 hours 3 July 2022 |
|---|---|---|---|---|---|---|
| Hire or Damages for Hire | **45,000** | **pdpr** | 38.9861 | days | $1,754,374.50 | Per *time charter* rates for the period from redelivery to estimated final discharge of cargo and cleaning of holds |

(*See* Verified Complaint at ¶17; Dkt. 1-3 (emphasis added).)

This calculation is wrong for two reasons:

*First*, there is no "Hire" to be paid under a voyage charter. That is the correct term used for time charters. *Armada Parcel Services Ltd. v. Inachos Shipping Co.*, Civ. No. 3-92-809, 1993 WL 650857 (D. Min. Oct. 29, 1993) ("…the vocabulary of the shipping trade had for many years used

7

the word "hire" for sums payable under time charters and restricted the word "freight" to voyage charter-parties and bills of lading."). As such, the reference to "Hire" is completely inappropriate.

*Second*, to the extent Plaintiff has any viable claim against Nutrion under the Voyage Charter – which is denied – the correct rate Plaintiff should have used to calculate the amount of these "demurrage" and "detention" claims is the $29,000 pdpr, as set forth in the Voyage Charter. (*See* Dkt. 1-1 at p. 2.)

Accordingly, while Nutrion denies that Plaintiff suffered any damages, for purposes of calculating security, Plaintiff's first line item for "Hire" should be reduced to $454,937.50, (*i.e.*, $29,000 x 15.6875), and the second line item for "Hire or Damages for Hire" should be reduced to $1,130,596.90 (*i.e.*, $29,000 x 38.9861).

          b.    Plaintiff's Claims for "CVE" and "MGO" Should Be Reduced To $0.

The Court should reduce Plaintiff's claims for "CVE" and "MGO"[5] from $445,589,84 to $0.

As set forth above, Plaintiff's claims for "CVE" and "MGO" are calculated using the time charter rates between Plaintiff and the Owner:

| CVE | 1,00 | p 30 days | | | $2,733.68 | Per *time charter* rates |
|---|---|---|---|---|---|---|
| MGO | 6.00 | mt | 1350 | pmt | $442,856.16 | Per *time charter* rates |

(*See* Verified Complaint at ¶17; Dkt. 1-3 (emphasis added).) MGO is bunker fuel used by the Vessel and is paid for by the time charterer under the Time Charter. It is less clear what "CVE" stands for and Nutrion is unable to determine what this line item relates to as it was not a party to the Time Charter between Plaintiff and the Vessel's owner. In fact, the terms of the Voyage Charter do not include a reference to MGO or CVE and, thus, there is no contractual basis for claiming such expenses against Nutrion.

Accordingly, as these expenses were not contemplated in the parties' agreement, for purposes of calculating security, Plaintiff's claims for MGO and CVE should be reduced to $0.

---

[5] While it is clear that "MGO" relates to bunker fuel used by the Vessel, it is less clear what "CVE" stands for. Defendant is unable to determine what this line item relates to as it was not a party to the Time Charter between Plaintiff and the Vessel's head owner.

### 3. Plaintiff's Claims For $1,342,956.47 In "Stockton Port PDA Costs" and the "Discharge Costs At Mare Island" Should Be Reduced To $0.

Plaintiff's claims for security in the amount of $1,342,956.47 in "Stockton port PDA costs" and the "Discharge Costs at Mare Island" listed in the estimated damages spreadsheet attached as Ex. 3 to the Verified Complaint (*see* Dkt. 1-3), are wholly speculative and not supported by any evidence.

Judge Buchwald's decision in *Daeshin Shipping Co. Ltd.,* 2005 WL 2446236, at *2, is instructive. There, Judge Buchwald reduced the plaintiff's attachment pursuant to Supplemental Rule E(6) where the plaintiff failed to produce evidence to justify the total amount of the attachment. Judge Buchwald ordered the release of the amount that was in excess of the funds for which there was sufficient evidence to justify attachment. 2005 WL 2446236, at *2. Similarly, in *Sixteen Thirteen Marine S.A. v. Congentra A.G.*, 2008 WL 2885307, at *27, Judge Baer, found a portion of plaintiff's claimed damages amounted to "little more than wishful thinking." *See also Transportes Navieros y Terrestres S.A. de C.V.*, 572 F.3d at 111 n. 10 (citing cases finding good cause to reduce the Rule B attachment.)

Likewise, here, Plaintiff has not provided any documentation to support its $1,342,956.47 in "Stockton port PDA costs" and the "Discharge Costs at Mare Island" and as Judge Buchwald noted in Daeshin, Plaintiff's bare assertions are not enough.

### 4. Plaintiff's Claims For Interest, Arbitration Costs and Legal Fees Should Be Reduced.

Finally, Plaintiff's claims for $985,000 in estimated interest for the principal claim, arbitration costs and solicitor and counsel fees are excessive and unsupported.

Clause 24 of the Voyage Charter provides "Arbitration, if any, to be settled in London, according to English Law." Plaintiff failed to submit a Declaration from an English solicitor establishing it is entitled to recover its claims for interest for the principal claim, arbitration costs and solicitor and counsel fees under English law and, if so, whether the $985,000 amount claimed in the security demand is a fairly stated amount. Thus, the Court should exercise its discretion and reduce the security amount to exclude these claims.

/ / /

9

## V. CONCLUSION.

Based on the foregoing Nutrion respectfully requests that this Court should exercise its discretion under Fed. R. Civ. P. Supp. Admiralty Rule E (6) and reduce the security ordered in this case, and award such other and further relief as the Court may deem just and proper.

DATED: August 17, 2022

BLANK ROME LLP

By: */s/ Allen Ho*
    Allen Ho
    William R. Bennett III*
    Lauren B. Wilgus*
Attorneys for Defendant
NUTRION FEEDS NORTH AMERICA, INC.
\* - *pro hac vice application to be submitted*