UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THORCO PROJECTS A/S,<br><br>Plaintiff,<br><br>v.<br><br>NUTRION FEEDS NORTH AMERICA,<br><br>Defendant. | No. 2:22-cv-01331-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Defendant Nutrion Feeds North America, Inc.'s ("Defendant") *Ex Parte* Application to Reduce Security. (ECF No. 14.) Plaintiff Thorco Projects A/S ("Plaintiff") filed an opposition. (ECF No. 19.) Defendant filed a reply. (ECF No. 20.) For the foregoing reasons, the Court DENIES Defendant's *Ex Parte* Application.

///
///
///
///
///
///
///
///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On or about March 1, 2022, the parties entered into a charter party agreement wherein Plaintiff agreed to charter the M/V ANSHUN (the "Vessel") to Defendant for the carriage of calcium salt and palmitic acid. (ECF No. 1 ¶ 6.) Plaintiff alleges the charter party agreement is a maritime contract, which required Defendant to load safe cargo in an orderly manner. (*Id.* ¶¶ 7–8.) Plaintiff alleges that upon arrival at the discharge port in Stockton, California in June 2022, it was discovered that a substantive portion of the cargo had spontaneously deteriorated and/or liquified and had created a dangerous and/or hazardous condition onboard. (*Id.* ¶ 10.) Plaintiff alleges Defendant's failure to load non-dangerous cargo which could be transported in a safe and orderly manner was a breach of the charter party agreement. (*Id.* ¶ 12.)

On July 27, 2022, Plaintiff filed a Verified Complaint pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rule") B and Federal Rule of Civil Procedure ("Rule") 9(h), in which it seeks "to secure jurisdiction and security over Defendant" while Plaintiff's claims are arbitrated in London. (*Id.* ¶¶ 19–20.) On July 28, 2022, the Court issued an Order authorizing Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B and set the amount of security at $5,110,000 based on Plaintiff's estimation of its damages. (ECF Nos. 6, 7.) On August 17, 2022, Defendant filed the instant *ex parte* application pursuant to Supplemental Rules E(4)(f) and (6), seeking to reduce the amount of security ordered in this case. (ECF No. 19 at 4.) The Court held a hearing on September 8, 2022 and took the matter under submission thereafter.

## II.   STANDARD OF LAW

"Under Rule B of the Supplemental Admiralty Rules, [a] plaintiff may attach a defendant's property if four conditions are met: (1) [p]laintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment."[1] *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208,

---

[1] As to the threshold question of whether attachment is proper, Defendant does not dispute the following: "[D]efendant cannot be found within the district; property of the [D]efendant can

1210 (9th Cir. 2010) (citing Fed. R. Civ. P. Adm. Supp. R. B).  "[Supplemental] Rule B maritime attachments serve the dual purpose of obtaining jurisdiction over an absent defendant and securing collateral for a potential judgment in plaintiff's favor." *G.O. Am. Shipping Co., Inc. v. China COSCO Shipping Corp. Ltd.*, No. C17-0912 RSM, 2017 WL 3006892, at *2 (W.D. Wash. July 14, 2017).  "After receiving notice of the attachment, defendant may contest it under Supplemental Rule E(4)(f)." *Id.*  Supplemental Rule E(4)(f) entitles the owner of the attached property to a prompt hearing at which the plaintiff bears the burden to show why the attachment should not be vacated.  Fed. R. Civ. P. Adm. Supp. R. E(4)(f).  "Maritime plaintiffs, however, are not required to prove their case at this stage." *G.O. Am. Shipping Co., Inc.*, 2017 WL 3006892, at *2.  Rather, "at the Rule E(4)(f) hearing, the plaintiff bears the burden of proving there were reasonable grounds and probable cause to arrest the defendant's property." *Fluence Energy, LLC v. M/V BBC FINLAND*, No. 3:21-cv-01239-BEN-JLB, 2022 WL 378197, at *8 (S.D. Cal. Feb. 8, 2022).  Under Supplemental Rule E(6), "the court may, on motion and hearing, for good cause shown, reduce the amount of security given."  Fed. R. Civ. P. Adm. Supp. R. E(6).

### III.  ANALYSIS

Defendant argues the Court should reduce the security ordered in this case pursuant to Supplemental Rule E(6).  (ECF No. 14 at 6.)  Specifically, Defendant argues: (1) Plaintiff's claims for "Hire," "Hire or Damages for Hire," "CVE," and "MGO" are barred or, alternatively, should be reduced; (2) Plaintiff's claims for "Stockton Port PDA Costs" and "Discharge Costs at

---

be found within the district; and there is no statutory or maritime law bar to the attachment." *Equatorial Marine*, 591 F.3d at 1210.  Although Defendant does not explicitly dispute that "Plaintiff has a valid prima facie admiralty claim" in its *ex parte* application (*see* ECF No. 14), Defendant in reply argues the damages claimed do not "sound in admiralty" and are not "valid maritime claims" because they are not recoverable for various reasons (ECF No. 20 at 2).  The Court need not and does not consider arguments raised for the first time in reply — such as arguments that these are invalid contingent indemnity claims — that could have been raised in the original motion. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  While Defendant argues certain damages are not recoverable, Defendant does not dispute that the charter party agreement that forms the basis for Plaintiff's claims as alleged in the Verified Complaint is a maritime contract. *See Equatorial Marine*, 591 F.3d at 1210 ("To determine whether [ ] claims sound in admiralty, we look to whether the principal objective of the claimed contract or dealings is maritime commerce.") (internal quotation marks omitted).  The Court thus concludes Plaintiff has met its burden to satisfy the procedural requirements of Supplemental Rule B.

Mare Island" should be reduced; and (3) Plaintiff's claims for interest, arbitration costs, and legal fees should be reduced.  (*Id.* at 7–11.)  The Court will address each argument in turn.

### A. <u>"Hire," "Hire or Damages for Hire," "CVE," and "MGO"</u>

Defendant raises two alternative arguments as to Plaintiff's "Hire," "Hire or Damages for Hire," "CVE," and "MGO" claims.  (ECF No. 14 at 7–8.)  First, Defendant argues those claims are barred by *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927).  (*Id.*)  Second, Defendant argues the Court should reduce the security for "Hire" and "Hire or Damages for Hire" claims from $2,460,312 to $1,585,534.40 and should reduce the security for "CVE" and "MGO" claims from $445,589.84 to $0.  (*Id.*)  The Court will first address *Robins Dry Dock* and then whether the amount of security should be reduced for these claims.

#### i. *Whether the Claims are Barred by* Robins Dry Dock

Defendant argues the Supreme Court held in *Robins Dry Dock* that a maritime plaintiff may recover economic losses only where the plaintiff has suffered physical damage to its property and the economic losses flow from that damage.  (ECF No. 14 at 7.)  Defendant argues Plaintiff's claims are based on a time charter between Plaintiff and the Vessel's owner — not the breach of the voyage charter between Plaintiff and Defendant.  (*Id.* at 8.)  Defendant therefore argues the "Hire," "Hire or Damages for Hire," "CVE," and "MGO" charges are not based on contractual claims against Defendant, but rather, tort claims asserted to recover economic losses.  (*Id.* at 8–9.)  Put simply, Defendant argues Plaintiff lacks sufficient proprietary rights in the Vessel to recover its economic losses under *Robins Dry Dock*.  (*Id.* at 9.)

In opposition, Plaintiff argues *Robins Dry Dock* does not apply to the instant case because English law governs the merits of the underlying dispute pursuant to a mandatory law and jurisdiction clause.  (ECF No. 19 at 6.)  Plaintiff emphasizes that Defendant has not cited any authority in which a court applied *Robins Dry Dock* to reduce the security of a Supplemental Rule B attachment under similar circumstances.  (*Id.* at 7.)  Plaintiff contends it has pleaded reasonably estimated damages arising from Defendant's breach of maritime contract and Defendant has failed to provide good cause to reduce the security.  (*Id.* at 8–9.)

///

The Court agrees with Plaintiff that *Robins Dry Dock* is distinguishable from the instant case. In *Robins Dry Dock*, the time charterer of a vessel sued a dry dock for lost profits after the dry dock negligently damaged the vessel's propeller. 275 U.S. at 309. The Supreme Court denied recovery because the time charterer's loss arose only because of its contract with the vessel's owner, as the time charterer had no protected interest in the vessel itself. *Id.* "Thus, *Robins Dry Dock* established a general rule, which retains its vitality, against recovery of economic loss caused by a maritime tort to the person or property of another." *Nautilus Marine, Inc. v. Niemela*, 170 F.3d 1195, 1196 (9th Cir. 1999).

In the instant case, Plaintiff alleges Defendant breached the charter party agreement between the parties by failing to responsibly load safe cargo in an orderly manner. (ECF No. 1 at 2–3.) Plaintiff further alleges the Vessel's delay caused Plaintiff to suffer $5,110,000 in damages.[2] (*Id.* at 4–5.) It is undisputed that Plaintiff's claims will be resolved under English law. (ECF No. 1-1 at 9 ("Arbitration, if any, to be settled in London, according to English Law.").) Plaintiff correctly points out that Defendant fails to cite any case law in which courts applied *Robins Dry Dock* under similar circumstances. Indeed, district courts considering maritime attachment have declined to rule on the merits of underlying claims being litigated in foreign countries. *See Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Comm.*, 511 F. Supp. 2d 399, 406 (S.D.N.Y. 2007) ("It is not for this Court to decide whether incidental and consequential damages are recoverable under the charter parties at issue, but rather for the English court to resolve in due course. The Court is satisfied that plaintiff's claims are not frivolous and will not reduce the attachment to exclude loss of reputation damages."); *Glory Wealth Shipping Serv. Ltd. v. Five Ocean Corp.*, 571 F. Supp. 2d 531, 535 (S.D.N.Y.), *amended on reconsideration in part*, 571 F. Supp. 2d 542 (S.D.N.Y. 2008) ("Because the Time Charter is subject to arbitration in London and governed by English law, . . . questions of contract law [ ] are for the London arbitrators to decide, not for this Court."); *Rice Co. v. Express Sea Transport Corp.*, No. 07 Civ. 7077, 2007 WL 4142774, at *2 (S.D.N.Y. Nov. 15, 2007) ("Courts in a maritime attachment

---

[2] As will be discussed, Plaintiff seeks to reduce this amount to $5,000,000 based on an updated estimate of its damages. (ECF No. 19 at 14.) The Court intends to grant that request.

action are not permitted to make substantive determinations on the plaintiff's underlying claim, since 'Rule B specifies the sum total of what must be shown for a valid maritime attachment.'").

Because the Court concludes that *Robins Dry Dock* does not apply to this case, the Court declines to reduce the amount of security on that basis.

        *ii.*    *Whether the Claims are Overly Inflated*

           *a.*  *"Hire" and "Hire or Damages for Hire"*

Defendant argues Plaintiff's "Hire" and "Hire or Damages for Hire" claims are improperly calculated using the $45,000 per day pro rata ("pdpr") amount included in the time charter between Plaintiff and the Vessel owner, to which Defendant was not a party. (ECF No. 14 at 9.) Defendant states this calculation is wrong for two reasons: (1) there is no "Hire" to be paid under a voyage charter; and (2) to the extent Plaintiff has a viable claim against Defendant, Plaintiff should have calculated these charges using the $29,000 pdpr for "demurrage" and "detention" claims under the voyage charter. (*Id.* at 10.) Defendant thus contends the Court should reduce Plaintiff's "Hire" and "Hire or Damages for Hire" claims from $2,460,312 to $1,585,534.40. (*Id.* at 9.)

In opposition, Plaintiff provides a declaration from Solicitor Ian Richard Short ("Short") to argue that under English law, Plaintiff is to be put in the position that it would have been but for Defendant's breach. (ECF No. 19 at 9.) Plaintiff argues that because of Defendant's breach, Plaintiff was compelled to hire the Vessel for considerably longer than anticipated, which has resulted in damages at $45,000 a day, now estimated for a period of 71 days.[3] (*Id.*) Plaintiff also argues the demurrage rate of $29,000 per day is inapplicable because the rate did not apply at the disport. (*Id.*)

The parties do not cite — nor can the Court locate — any controlling authority to guide the Court as to how to assess Plaintiff's estimated damages in the context of Supplemental Rule E(6). In the absence of controlling authority on point, the Court is persuaded by the Second Circuit, which has stated:

---

[3] In Plaintiff's updated estimate it lists "Hire" damages and removes reference to "Hire or Damages for Hire." (ECF No. 19-1 at 4.)

6

> In light of the historical practice and purpose of maritime attachments, we conclude that a court may assess preliminarily the reasonableness of plaintiff's damages claim when setting a security under Rule E(5) and may weigh this and other equitable considerations when evaluating whether good cause exists to reduce a security under Rule E(6). In making a preliminary assessment of plaintiff's damages claim, the court should be satisfied that the plaintiff's claims are not frivolous, but it should not require the plaintiff to prove its damages with exactitude.

*Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp., N.V.*, 572 F.3d 96, 111 (2d Cir. 2009).

In the instant case, Plaintiff has provided sufficient evidence to persuade the Court that its estimate for "Hire" charges is not frivolous. Plaintiff cites a declaration from its authorized representative, Thomas Mikkelson, indicating that "Hire" damages will amount to $3,195,000 ($45,000 pdpr x 71 days). (ECF No. 19-1 at 3–4.) Plaintiff also cites Short's declaration indicating that Plaintiff is entitled to this amount in damages under English law. (ECF No. 19-2 at 3.) It also bears mentioning that Plaintiff provides authority showing that it is permissible for the Court to order security up to twice the amount of Plaintiff's principal claims. (ECF No. 19 at 12–13 (citing Fed. R. Civ. P. Adm. Supp. R. E(5)(a); 28 U.S.C. § 2464).) Defendant does not address this argument in its reply. (*See* ECF No. 20.) If the Court applied the $29,000 pdpr requested by Defendant x 71 days, the estimated damages would be $2,059,000.[4] Under Supplemental Rule E(5)(a), the Court would be well within its discretion to set security for these claims at up to double that amount — $4,118,000.[5] For its part, Defendant fails to convince the Court there is good cause to reduce the security.

Accordingly, the Court declines to reduce the security as to the "Hire" claims.

        *b.  "CVE" and "MGO"*

Defendant argues the "CVE" and "MGO" claims are improperly calculated using time charter rates between Plaintiff and the Vessel owner. (ECF No. 14 at 10.) Defendant argues the

---

[4] Defendant does not address Plaintiff's updated estimate of 71 days for "Hire" damages. (*See* ECF No. 20.)

[5] Plaintiff correctly points out that the Court could apply the same formula doubling the amount for all of Plaintiff's claims, which would lead to a total security of up to $8,000,000. (ECF No. 19 at 12–13.)

7

terms of the voyage charter do not include a reference to "MGO" or "CVE" and thus there is no contractual basis for claiming such expenses against Defendant. (*Id.*) In opposition, Plaintiff again cites Short's declaration to argue that these are all costs, expenses, and damages which are recoverable under English law. (ECF No. 19 at 10.) Plaintiff further argues the amount of fuel consumed and utilized has been specifically accounted for and detailed in Plaintiff's updated costs summary. (*Id.*)

As with Plaintiff's "Hire" claims, Plaintiff has provided sufficient evidence to persuade the Court that its "CVE" and "MGO" claims are not frivolous. Plaintiff cites Mikkelson's declaration indicating that based on updated estimates, "MGO" claims total $319,447.95 and "CVE" claims total $3,550. (ECF No. 19-1 at 3.) Plaintiff also cites Short's declaration indicating that Plaintiff is entitled to this amount in damages under English law. (ECF No. 19-2 at 4.) Defendant has not convinced the Court that there is good cause to reduce the security.

Therefore, the Court declines to reduce the security as to the "MGO" and "CVE" claims.

B.  "Stockton Port PDA Costs" and "Discharge Costs at Mare Island"

Defendant argues Plaintiff has not provided any documentation to support its estimate for "Stockton port PDA costs" and "Discharge Costs at Mare Island." (ECF No. 14 at 11.) In opposition, Plaintiff asserts that the estimated costs for discharge are lower than previously anticipated because, to mitigate damages, the Vessel discharged and discarded the cargo in Mexico rather than Mare Island. (ECF No. 19 at 11.) However, Plaintiff cites to sworn declarations that establish the damages are recoverable under applicable law. (*Id.*)

Plaintiff again provides sufficient evidence to persuade the Court that these claims are not frivolous. With respect to the discharge costs, Plaintiff cites Mikkelson's declaration, which states that the estimated cost for discharge and disposal of the cargo in Mexico is $513,518.28. (ECF No. 19-1 at 2.) With respect to the other costs, Mikkelson's declaration delineates updated estimates for dockage ($94,368), spare delivery ($2,700), vessel survey ($1,803), and port charges ($33,743.47). (*Id.* at 3.) Plaintiff also cites Short's declaration indicating these costs are recoverable under English law. (ECF No. 19-2 at 3–5.) Defendant fails to convince the Court that there is good cause to reduce the security.

8

Thus, the Court declines to reduce the security as to these claims.

C.   Interest, Arbitration Costs, and Legal Fees

Defendant argues Plaintiff failed to submit a declaration from an English solicitor establishing it is entitled to recover its charges for interest, arbitration costs and solicitor and counsel fees under English law and, if so, whether the amount claimed is fairly stated. (ECF No. 14 at 11.) In opposition, Plaintiff argues the amount of interest and fees sought are reasonable estimates in the present action, are permitted under applicable English law, and regularly awarded. (ECF No. 19 at 11.)

The Court finds Plaintiff provides sufficient evidence to show that these claims are not frivolous. Plaintiff cites Mikkelson's declaration to show that the amount needed as security for interest, costs, and fees is estimated to be no less than $995,000. (ECF No. 19-1 at 3.) Plaintiff also cites Short's declaration to show that "[i]nterest, costs, and attorney's fees are regularly awarded to the prevailing party under English Law and the procedural rules of London arbitration." (ECF No. 19-2 at 4.) Short also indicates "[i]t is standard for interest to be awarded to the prevailing party in the amount of 4.5% [to] 5.5%." (*Id.*) Defendant fails to convince the Court that there is good cause to reduce the security.

Accordingly, the Court therefore declines to reduce the security as to these claims.

**IV.   CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's *Ex Parte* Application. (ECF No. 14.) However, based on the updated estimate from Plaintiff and pursuant to Supplemental Rule E(6), the attached property of Defendant may be reduced upon the posting of a cash remittance or surety bond in the amount of USD $5,000,000.

IT IS SO ORDERED.

**DATED: September 8, 2022**

Troy L. Nunley
United States District Judge